## Schaeffer *versus* Fowler.

1. If one holding a judgment against a vendor of land which is a lien on said land takes an order on the vendees of said land, which they accept, for the amount of his judgment, not as a payment of it but merely as collateral and to be applied only when collected, it is subject to all the equities that existed between the drawer and the acceptors at the time it was drawn. If by reason of the worthlessness of the drawee's title which he covenanted to convey to the acceptors of the order the consideration has failed, the order is as worthless in the hands of the drawee as if it were in the hands of the drawer.

2. One who has taken a draft for a pre-existing debt and has given no other consideration for it is not a holder for value. The acceptor may set up any ground of defense against the drawee which would be good against the drawer.

3. The joint purchase of land by two persons does not make them partners in the legal acceptation of that term. Such joint purchase does not give the one power to indorse for both, nor to accept a draft of the vendor in payment of the purchase money of said land.

[Schaeffer *v.* Fowler.]

January 7th, 1886.    Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 3, of *Phila-
delphia county:* Of January Term, 1885, No. 95.

This was an action of assumpsit brought May 3d, 1879, by
John T. Fowler trading as John T. Fowler & Co. against
George W. Arms and John H. Schaeffer, late trading as Arms
& Schaeffer.   The Sheriff served John H. Schaeffer and re-
turned " *nihil habet* " as to George Arms who had died be-
fore the suit was brought.

The *narr* alleged the drawing of a certain bill of exchange
by one Christian Sharer, on February 27th, 1877, for $522.01,
which the defendants accepted, payable on April 1st, 1877, and
thereby became liable to pay the said amount to the plaintiff;
it also contained the common counts.   John H. Schaeffer who
appeared alone as defendant, pleaded *non assumpsit*, payment,
with leave, etc. ; he also filed an affidavit, under the rule of
court denying the existence of any partnership with Arms, the
co-defendant, under the name of Arms & Schaeffer or any
other name, in relation to the subject matter of the action, to
wit, the draft upon which the suit was brought.   The plaintiff
replied *non solvit* and issue.

On the trial before FINLETTER, J. the facts appeared as fol-
lows :—

The action was brought by the plaintiff on the following
instrument :—

*Hannah Furnace*, Feb. 27th, 1877.

MESSRS ARMS & SCHAEFFER.   Please pay to the order of
John T. Fowler & Co., five hundred and twenty-two $\frac{01}{100}$ dol-
lars, and charge the same to my account. $522.01.

CHRISTIAN SHARER.

[Indorsed.]
    Accepted. GEO. H. ARMS, for ARMS & SCHAEFER.
Payable.   April 1st, 1877.

The question of the consideration for the same depended on
the following facts :

Christian Sharer, the drawer, owned a farm in Center
county, on which there was an old mine, or "hole in the
ground," supposed to contain silver; he entered into a written
agreement, to sell the farm to Messrs Arms & Schaeffer.
This agreement was produced by the defendant, Schaeffer; it
was dated February 24th, 1877, and executed under seal of the
parties individually ; the consideration was $1,500, of which
$250 was paid at the execution; the balance was to be paid on
or before April 1st, 1877 ; the quantity of land was said to be
170 acres, more or less; 20 acres were to be re-conveyed to

Sharer, reserving the mineral rights.   On March 31st, 1877, a supplemental agreement was entered into by the same parties, also individually, by which the time for the delivery of the deed was extended to April 20th, 1877, and it was provided that the tract should be surveyed and payment made at the rate of $9 per acre for the number of acres so found.   It was not disputed that the reason of the delay and for this supplemental agreement was the suspicious character of the warrant and letters-patent in Sharer's title which made it doubtful whether the " old mine " was really on his farm.   The evidence fails to show that Sharer made any attempt. to comply with the terms of the supplemental agreement, although the defendants' attorney was ready to make payment upon such compliance.   No deed was ever delivered to either of the defendants.

At the date of this agreement, February 24th, 1877, John T. Fowler, the defendant in error, held certain judgments against Christian Sharer in the Court of Common Pleas, of Centre county, aggregating $522.01, which were subsisting liens on the property sold to Arms & Schaeffer under the agreement of February 27th, 1877.

Fowler agreed with Sharer that he would accept an order on Arms & Schaeffer, who owed him the balance of the purchase money on said property, and would credit him with the proceeds on the judgments.

The defendant offered to prove that the plaintiff was not a bona fide holder of the draft for value ; that the consideration for the acceptance of the order in question failed between the original parties ; that Fowler had notice at the drawing and acceptance that the draft was only a part payment of purchase money of land sold by the drawer to George H. Arms and John H. Schaeffer as tenants in common, and that the sale of the land fell through on account of defects in Sharer's title ; that Fowler was not a bona fide holder for value of the draft, and that therefore the draft became of no value in the hands of Fowler who had knowledge of the transactions, and took the draft subject to the equities.   Objected to.   Exception. (First assignment of error.)

The defendant presented, inter alia, the following points :

2. If the jury find from the evidence that the order was accepted by George H. Arms, in part payment of the purchase money of certain land without the express authority of Schaeffer, Schaeffer would not be bound by the acceptance, and the verdict should be for the defendant.   Answer, refused. Exception for defendant.   (Second assignment of error.)

3. If the jury find from the evidence that the plaintiff gave no consideration for this draft, then he is not entitled to re-

cover thereon, and the verdict should be for the defendant. Answer, refused. Exception for defendant. (Third assignment of error.)

4. If the jury find from the evidence that the defendant and Arms were acting together in the purchase of a particular tract of land to be used for mining and farming purposes, and that Arms accepted this draft before the land was purchased, and without the express authority of Schaeffer, then the plaintiff is not entitled to recover, and the verdict should be for the defendant. Answer, refused. Exception for defendant. (Fourth assignment of error.)

5. If the jury find from the evidence that the defendant has given *prima facie* evidence of the absence of any original consideration for the order or draft in question, then the burden of proving the consideration is cast upon the plaintiff as payee; and unless the evidence produced by him shall have satisfied the jury that there was a valuable consideration given for the order or draft, the verdict should be for the defendant. Answer, refused. Exception for defendant.

The general charge of the court was as follows:

I have, by ruling out certain testimony, relieved you of some of the questions which have been discussed. The plaintiff claims upon a draft drawn by Christian Sharer in favor of John T. Fowler & Co., upon Messrs. Arms & Schaeffer. This draft is accepted in the following words: "Accepted. Geo. H. Arms, for Arms & Schaeffer, payable April 1st, 1877."

[The only question for your consideration is, Had Arms authority to accept the draft for Arms & Schaeffer?]

He would have no authority to accept in this form unless he and Schaeffer were in partnership.

The plaintiffs must establish this partnership before they can recover.

Partnership may be created in many ways:

1. By the written declarations of the parties.
2. By the oral declarations of the parties.
3. By the acts of the parties.

[A partnership may be general or restricted. It may be for doing all things possible, and it may be for a single enterprise. Whatever it may be for, or however it may be created, the one partner has the right to bind the others in all matters pertaining to business or enterprise in which they may be engaged.]

[The admitted facts in this case are:

1. That they had entered into articles of agreement for the purchase of a tract of land for the purpose of mining for silver, and paid $250 on account of the purchase.

2. That they took possession of the land and worked the old mine, and made experiments upon the land.

[Schaeffer v. Fowler.]

3. That they were at the mine together two or three times.

4. That they together paid the expenses of mining the land.]

In this case there is no evidence of any written articles of co-partnership.

The partnership must be found, if found at all in the acts of the parties and in their declarations and conversations.

[Whenever parties are engaged in a common enterprise they are presumed to be partners in that enterprise until the contrary appears in evidence. If the evidence shows that Arms & Schaeffer were engaged in a common enterprise, and the draft was accepted in furtherance of that enterprise, then Arms had a right to accept for himself and Schaeffer.]

What were the declarations of the parties?

The plaintiff has shown by several witnesses:

1. That they spoke of each other as partners.

2. They spoke of the business as the business of both.

3. They acted together in the purchase of the land and working the land.

4. They both spoke of this draft after the acceptance as their draft; as a draft they had to pay.

If this evidence is believed it establishes a co-partnership, and fixes the liability of Arms & Schaeffer.

This evidence is met only by the evidence of Schaeffer, who says he never was in partnership with Arms.

He does not, however, that I recollect, deny any of the acts or declarations mentioned by the witnesses for the plaintiff.

If there was no partnership, Arms had no authority to accept the draft without the express authority of Schaeffer.

If, however, the draft was accepted without authority, but acquiesced in afterwards by Schaeffer, that would make both Arms and Schaeffer responsible upon the draft.

There is some evidence upon this subject which the jury will consider, if they find that there was no partnership. If there was a partnership it will not be necessary to consider this evidence.

As one of the witnesses testified that Arms said to Schaeffer, "The draft is due," and that they went to the bank to have the bank extend the time of payment to the 20th of April.

To recover, the plaintiff must show either that there was a partnership between Arms & Schaeffer, or that Schaeffer acquiesced in the acceptance.

If they have established neither of them, the verdict must be for the defendant.

Verdict for the plaintiff for $748.04, and thereupon judgment, whereupon the defendant took this writ, assigning for error the rejection of his offer of evidence as set forth in the first assignment of error above, the refusal of his points, and

those portions of the general charge included within the brackets.

*Henry M. Dechert*, for plaintiff in error.—There is no doubt but that the maker of a note or acceptor of a draft is liable to an innocent *bona fide* holder although he made the note or accepted the draft for the accommodation of the payee or drawer; but it may be otherwise where the holder did not receive it in the ordinary course of business, and for a valuable consideration, or after notice. In a suit by the indorsee of a bill against the acceptor, the question whether the plaintiff was a *bona fide* holder without notice should be left to the jury: Boggs *v.* Lancaster Bank, 7 W. & S., 331; Barnett *v.* Offerman, 7 Watts, 130; Swain *v.* Ettling, 8 Casey, 486; Kirkpatrick *v.* Muirheid, 4 Harris, 117; s. c. 9 Id., 237.

It is submitted, therefore, that the plaintiff in error was clearly entitled to offer proof showing that he received nothing for his liability, and that the defendant in error gave nothing for his title, and that the evidence in the case required the submission of the question of consideration to the jury.

Fowler took the draft without giving value for it, but only as collateral security for the debt of the drawer, and with knowledge of the dealings between Sharer, Schaeffer and Arms.

The mere acceptance from a debtor of his own note or the note of a third person, in case of an antecedent indebtedness, is not a payment of the indebtedness. In the absence of a special agreement it must be considered as a conditional payment or as collateral security. The debtor continues liable for his own debt in the event of a failure of payment of the note thus given or transferred: Hunter *v.* Moul, 2 Out., 13, citing Leas *v.* James, 10 S. & R., 307; McGwin *v.* Holmes, 2 Watts, 121; Weakly *v.* Bell, 9 Id., 273; McIntyre *v.* Kennedy, 5 Casey, 448; Brown *v.* Scott, 1 P. F. S., 357; League *v.* Waring & Co., 4 Norris, 244.

It has been held that, as the drawing or accepting of bills is not in general necessary in a farming or mining concern, bills accepted by one of the partners in such a concern, without express authority, do not bind the firm. And partners not in trade cannot bind each other by bills. Therefore one attorney, who is partner with another, has not, from that relation alone, power to bind his co-partner by a bill or note, any more than have partners carrying on business as brokers by getting orders on commissions and dividing the expenses: Byles on Bills, No. 45, citing Greenslade *v.* Dower, 7 B. & C., 635; Dickinson *v.* Valpy, 10 Id., 128; Hedley *v.* Bainbridge,

3 L. B., 316 ; Forster v. Mackworth, L. R., 2 Ex., 163 ; Ballou v. Spencer, 4 Cow., 163.

One partner in a non-trading partnership cannot bind his co-partner by a bill or note drawn, accepted or indorsed by him in the firm name, even though it be for a debt of the firm, unless either he has express authority therefor from his co-partner, or the giving of such instruments is necessary to the carrying on of the partnership business, or is usual in similar partnerships, and the burden is upon the party suing on such note or bill to prove such authority, necessity or usage : Smith v. Sloan, 37 Wis., 285.

Agricultural partners whose business merely relates to the carrying on of a farm, have no such authority : Kimber v. Bullitt, 22 How., 267 ; Urquhart v. Powell, 54 Ga., 29 ; Dickinson v. Valpy, 10 Barn. & Cress., 128.

*Franklin Swayne*, (*Charles F. Hinckle* and *A. A. Stevens* with him,) for the defendant in error.—It is not claimed by plaintiff in error that there was any fraud, deception or misappropriation in the making, procurement and use of this draft by Sharer or Fowler. The only defence set up against it in the court below by plaintiff in error was want of consideration and authority of Arms to accept the same ; and the entire burden of the specifications of error is that the learned court below did not submit these two questions to the jury.

The court did not prevent plaintiff in error from trying to show that defendant in error was not a *bona fide* holder for value of the draft, but, on the contrary, gave him the widest possible latitude in offering evidence.

The sufficiency of the evidence is a preliminary question for the court ; not whether there is literally any evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, and upon whom the burden of proof is imposed : Com'rs of Marion County v. Clark, 94 U. S. S. C., 278 ; Hickman v. Jones, 9 Wall., 197 ; Toomey v. Railway Co., 3 C. B. (N. S.), 150 ; Galbraith v. Zimmerman, 12 W. N. C., 53 ; Phillips v. Meily, 4 Out., 374 ; Heysham v. Dettre, 8 Norris, 508.

A case should not be submitted to the jury where the evidence is so insufficient that the court ought not to sustain a verdict found thereon : Cauffman v. Long, 1 Norris, 72 ; Wilson v. Mitchell, 5 Out., 505.

The acceptance stamped on the draft all the qualities of commercial paper, and so it must be treated.

The mere knowledge of the holder of the terms of the arrangement between the drawer and the acceptor is not material. The payee looks only to the terms of the acceptance,

,and that when he has acted in good faith he is not to be preju-
diced by the acts of the drawer : Craig *v.* Sabbitt, 3 Harris,
238 ; Carpenter *v.* Nat. Bank, 42 Leg. Int., 48.

It is no ground of defence to an action against the acceptor
of a bill that the holder was informed that it was accepted in
consideration of an executory contract :   Davis et al. *v.*
McCready, 17 N. Y., 230 ; Lord *v.* Ocean Bank, 8 Harris,
·384 ; Twining *v.* Hunt, 7 W. N. C., 223 ; Carpenter *v.* Nat.
Bank, 42 Leg. Int., 48.

GORDON, J. What evidence is there that Arms and Schaef-
fer were partners in the purchase of the land ?   They are
tenants in common.

SWAYNE. They called each other partners.   Schaeffer knew
of the acceptance of the order, and acquiesced in it.

Mr. Justice GORDON delivered the opinion of the court,
February 1st, 1886.

The facts of this case are few, and easy of comprehension.
On the 24th of February, 1877, Christian Sharer entered into
a written agreement with George H. Arms and John H.
Schaeffer to sell, and upon full payment of the purchase
money convey, by a good and sufficient deed to the said Arms
and Schaffer a certain tract of land therein described.   It also
appears from the evidence that John T. Fowler, the plaintiff
below, held certain judgments against Sharer which were a
lien on the land embraced in the above mentioned agreement.
By an arrangement between Sharer and Fowler the latter
agreed to accept an order on Arms & Schaeffer, and apply
the proceeds to the judgments.   Accordingly an order was
drawn by Sharer in favor of Fowler, in the sum of five hun-
dred and twenty-two dollars and ninety-one cents, and ac-
cepted by George H. Arms for Arms & Schaeffer.   This
acceptance is the subject of the present suit.   There is no
dispute as to the fact that this order was drawn on account
of the purchase money due from the acceptors to the drawer,
and the question now is as to the power of Arms to accept for
Schaeffer. It was a mistake in the court below to assume that
the joint purchase of the land made the defendants partners
in the legal acceptation of that term, or that this fact gave
the one power to indorse for both.   There was some evidence
that they were partners in the mining operation conducted on
the property, but as to the land itself they were but tenants
in common, and their status as such was conclusively fixed by
the articles of agreement.   It follows, that since the order
was for purchase money, the power of Arms to accept as he
did should have been proved by some evidence of a direct
warrant, whether in writing or parol, from Schaeffer, and the

jury ought not to have been permitted to infer such power on the hypothesis of a partnership. Again : if this paper was taken by Fowler, not as payment on his judgment, but merely as collateral, and to be applied only when collected, it was subject to all the equities that existed between the drawer and the acceptors at the time it was drawn. Under circumstances such as here stated the order must be regarded only as a pledge or deposit for the security of an antecedent debt, and must, under our Pennsylvania authorities, be regarded as having.passed to the holder without consideration, hence subject to any lawful set-off or defence to which Arms & Schaeffer were entitled as against Sharer at the time it was accepted. The Pennsylvania cases cited by the defendant in error, as opposed to what is here stated, are not in point. They will be found on examination to support a rule about which there is no dispute, and one having no applicability to the case in hand ; that is, that the maker of accommodation paper cannot set up want of consideration as a defence against it in the hands of one to whom it has been pledged as collateral security for an antecedent debt. But the reason given for this doctrine is stated by Mr. Chief Justice BLACK, in Lord *v.* The Ocean Bank, 8 Har., 324, to be because accommodation paper is a loan of the maker's credit without restriction as to the manner of its use. In this very case, however, we have from this same learned Chief Justice the following statement : "It has been ruled in several cases that one to whom a negotiable instrument has been indorsed for a preexisting debt, who has given no other consideration for it, is not a holder for value. The maker, it is said, may aver any ground of defence against the indorsee of such note which would have been competent against the payee." The order before us was not accepted as a matter of accommodation, but in consideration of what was then supposed to be a debt due to Sharer, and if by reason of the worthlessness of his title to the land which he covenanted to convey to the acceptors the consideration has failed, that order is as worthless in the hands of the plaintiff as if it were still in the possession of Sharer. By reason of the mistakes thus pointed out, we feel ourselves constrained to sustain the several assignments of error, and send the case back for a re-trial.

The judgment of the court below is reversed, and a *venire de novo* awarded.