## OVERTON v. TYLER et al.

An instrument having the usual words of a note payable to bearer, and in addition an authority to any attorney to enter a judgment in favour of the holder for the amount of the note with costs, coupled with a release of errors and a waiver of stay of execution, and of the right to an inquisition and appraisement, *is not a negotiable note*, and consequently an execution may issue on a judgment (previously confessed) on the day after the day fixed for payment—the drawer not being entitled to the days of grace.

IN error from Common Pleas of Bradford county.

*July* 15.    This was a feigned issue directed to test the right of the parties to the proceeds of a sheriff's sale of the personal property of L. Smith, in which a special verdict was found, in substance, as follows: L. Smith drew a promissory note, falling due June 30th, 1845, for discount at bank, which was endorsed for him by Tyler et al., as sureties.    While this note was maturing, he gave to Tyler the following instrument:

"$1000.                                *Athens, February* 15, 1845.

" For value received, I promise to pay Francis Tyler and Levi Westbrook, or bearer, one thousand dollars, with interest, by the first day of June next.   And I do hereby authorize any attorney of any court of record in Pennsylvania, to appear for me and confess judgment for the above sum to the holder of this single bill, with costs of suit, hereby releasing all errors and waiving stay of execution and the right of inquisition on real estate; also waiving the right of having any of my property appraised which may be levied upon, by virtue of any execution issued for the above sum.

"L. SMITH.

This was to secure them, as endorsers of the above-mentioned note.

On this, a judgment was entered on the 10th of March, and an execution was left with the sheriff on the 2d of June.   Under this, the money was paid into court arising from the sale of personal property.   Prior to the sale, which was on the 2d and 3d of July, Overton left with the sheriff an execution on a judgment in his favour. The jury found that Tyler had paid the first-mentioned note, after protest, and on or before the 3d of July.

The court (CONYNGHAM, P. J.) gave judgment for Tyler, and this writ of error issued.

*Case* and *Overton*, for plaintiff in error.—The days of grace are part of the contract.   1 Pet. S. C. Rep. 25; Thomas *v.* Shoemaker, 6 Watts & Serg. 179; nor will the fact, that a warrant of attorney is

attached, alter or in any way affect that right—it is to be construed as if the note and the warrant were distinct instruments. A suit, then, not being maintainable before the 5th of June, of course no execution could issue for the same debt at an earlier period.

*Elwell* and *Williston*, contrà, contended, that by the agreement the judgment was to be entered as for an amount due on the 1st of June, and that the character of the note, if such it was, merged in that contract. But there never was a privilege of the days of grace; the judgment could not pass from hand to hand; and subsequent holders would certainly be bound to defalk any payments made on account of the judgment. These are principles irreconcilable with the rules regulating commercial paper. 3 Penna. Rep. 374; 1 Watts, 135; 1 Miles, 162; 6 Johns. Ch. Rep. 281; 2 Term Rep. 640.

GIBSON, C. J.—No case like the present, nor any thing from which a principle applicable to it can be drawn, is found in the books. The note is for the payment of money; it is payable to bearer; and it is payable absolutely: yet it is obvious that it was not intended to be negotiable in a commercial sense, and that the maker was not to have the usual days of grace. The debt is still between the original parties; and the contract by which it was created is to be interpreted, like any other, by their actual meaning. If they meant to make, not a promissory note, within the statute of Anne, but a special agreement with power to enter up judgment on it, they are bound by the result as they themselves viewed it. Such is one of the principles of Patterson *v.* Poindexter, and Boker *v.* Hazard, 6 Watts & Serg. 231, in which, however, there was no express promise. Nor would a subsequent holder take the paper on any other terms than those expressed in it. It has in it all the parts of a promissory note; but it has more: it contains not only a warrant to confess judgment with a release of errors, but an agreement to waive appraisement and stay of execution. But a negotiable bill or note is a courier without luggage. It is a requisite that it be framed in the fewest possible words, and those importing the most certain and precise contract; and though this requisite be a minor one, it is entitled to weight in determining a question of intention. To be within the statute, it must be free from contingencies or conditions that would embarrass it in its course; for a memorandum to control it, though endorsed on it, would be incorporated with it and destroy it. But a memorandum which is merely directory or collateral, will not affect it. The warrant and stipulations incorporated with this note evince, that

the object of the parties was not a general, but a special one. Payment was to be made, not as is usual at so many days after date, but at a distant day certain; yet the negotiability of the note, if it had any, as well as its separate existence, was instantly liable to be merged in a judgment, and its circulation arrested by the debt being attached, as an encumbrance, to the maker's land; and it was actually merged when it had nearly three months to run. Now it is hard to conceive how the commercial properties of a bill or note can be extinguished before it has come to maturity. That is not all. A warrant to confess judgment, not being a mercantile instrument, or a legitimate part of one, but a thing collateral, would not pass by endorsement or delivery to a subsequent holder; and a curious question would be, whether it would survive as an accessory separated from its principal, in the hands of the payee for the benefit of his transferee. I am unable to see how it could authorize him to enter up judgment, for the use of another, on a note with which he had parted. But it may be said that his transfer would be a waiver of the warrant as a security for himself or any one else; and that subsequent holders would take the note without it. The principle is certainly applicable to a memorandum endorsed after signing, or one written on a separate paper. But the appearance of paper with such unusual stipulations incorporated with it, would be apt to startle commercial men as to their effect on the contract of endorsement, and make them reluctant to touch it. All this shows that these parties could not have intended to impress a commercial character on the note, dragging after it, as it would, a train of special provisions which would materially impede its circulation. As it was not a negotiable note within the statute, the usual days of grace could not be added to the ostensible day of payment; and as the judgment was ripe at the expiration of that day, the execution was sustained by it, and being prior in delivery to the sheriff, was entitled to priority of satisfaction.

Judgment affirmed.